UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAINE NEVELS, | No. 2:22-cv-0441 KJM AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| J. KERN, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 23.

I.     Procedural History

The complaint named defendant Kern in his individual and official capacity and alleged that Kern violated plaintiff's Eighth Amendment rights. ECF No. 1. On screening, the court found that plaintiff had stated a claim against Kern in his individual capacity but dismissed the official capacity claim. ECF Nos. 7, 14.

Prior to the close of discovery, defendant filed a motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. ECF No. 23. Plaintiff opposes the motion. ECF Nos. 31, 32. Merits-based discovery is presently stayed pending resolution of the motion for summary judgment. ECF No. 25.

II. <u>Plaintiff's Allegations</u>

Plaintiff alleges that on May 17, 2020, defendant and another officer were supposed to escort him back to his cell but instead took him to the sally port. ECF No. 1 at 3. Once there, defendant told the other officer to get leg restraints, which plaintiff stated he refused to put on. <u>Id.</u> at 4. After plaintiff voiced his refusal, defendant stuck out his leg to throw plaintiff to the ground. Id. Plaintiff hopped over defendant's leg, and defendant responded by swinging plaintiff around and slamming him onto the concrete, causing his right shoulder and side of his head to slam into the ground. <u>Id.</u>

III. <u>Motion for Summary Judgment</u>

A. <u>Defendants' Arguments</u>

Defendant argues that he is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing suit. ECF No. 23.

B. <u>Plaintiff's Response</u>

At the outset, the court notes that while plaintiff has filed a statement of disputed facts (ECF No. 32), he has failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), <u>overruled on other grounds</u>, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of

////

2

"strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes the motion for summary judgment on the ground that he properly exhausted his administrative remedies.[1] ECF No. 31.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[1] Plaintiff also argues extensively that defendant violated his Eighth Amendment rights. However, defendant's motion for summary judgment is based solely on his assertion that plaintiff failed to exhaust his administrative remedies. Any arguments regarding the merits of plaintiff's claim will therefore not be addressed.

3

trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 23-10; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.   Undisputed Material Facts

Plaintiff did not separately respond to Defendant's Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed. Additional facts have been taken from plaintiff's grievances as appropriate.

At all relevant times, plaintiff was a California prison inmate and was housed at California State Prison (CSP)-Sacramento. DSUF (ECF No. 23-2) ¶ 1. Title 15 of the California Code of Regulations provides an administrative appeals process that permits an inmate to submit a written grievance to dispute a policy, decision, action, condition, or omission by the California Department of Corrections and Rehabilitation (CDCR) or CDCR staff. DSUF ¶ 4; Plaintiff's Statement of Disputed Facts (PSDF) (ECF No. 32) ¶ 4. Amendments which revised the grievance process went into effect on June 1, 2020. DSUF ¶ 4. The date a grievance was initiated determined which version of the regulations governed the procedures. Id.

Plaintiff's grievance history reflects that he submitted two grievances related to defendant's alleged May 17, 2020 use of force: Log No. SAC-A-20-01938 and Log. No. 016100. DSUF ¶ 5; ECF No. 31 at 4. Grievance SAC-A-20-01938 was submitted on or around May 19, 2020, and identified the subject as "Imminent Danger Staff complaint/excessive force P.C. 832.5/P.C.832.7." DSUF ¶¶ 5-6; PSDF ¶ 5; ECF No. 23-5 at 6. The form indicates that the first level of review was bypassed, and the appeal was accepted at the second level of review. ECF

No. 23-5 at 6-7. The appeal was partially granted in that an appeal inquiry was conducted, and it was determined that staff did not violate department policy. Id. at 2, 4; DSUF ¶ 6. The response was mailed or delivered to plaintiff on June 22, 2020. ECF No. 23-5 at 7; PSDF ¶ 5. Included in the response was the following advisement:

> Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeal process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review. Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted.

ECF No. 23-5 at 4; DSUF ¶ 7. Plaintiff did not appeal the decision. DSUF ¶ 10.

Log No. 016100 was submitted on July 15, 2020. DSUF ¶ 12; PSDF ¶ 5. Plaintiff characterizes Log No. 016100 as an amended grievance. PSDF ¶ 5. The subject was identified as "Fabricated & overblown RVR 115/Resisting staff" and alleged that the RVR was designed to cover up defendant's unnecessary use of force. ECF No. 23-8 at 8, 10. On August 25, 2020, an appeal response was issued that divided the grievance into two claims: Claim #001 related to the use of force and Claim #002 related to the disciplinary. ECF No. 23-8 at 3-4. The appeal was rejected with respect to the use of force allegations on the ground that the claims were duplicative to Log No. SAC-A-20-01938, and plaintiff was advised that he could appeal the rejection decision to the Office of Appeals.[2] DSUF ¶ 12; ECF No. 23-8 at 3. On August 26, 2020, plaintiff filed an appeal in which he identified that he was appealing the decision as to Claim #001 and asserted that it was not duplicative because he was appealing the disciplinary, not the use of force. DSUF ¶ 14; ECF No. 23-8 at 6-7. The appeal of the rejection was denied on October 31, 2020, on the ground that the claim regarding an alleged use of force was duplicative. DSUF ¶ 14; ECF No. 23-8 at 2. It stated that the decision exhausted plaintiff's administrative remedies. ECF No. 23-8 at 2.

---

[2] The grievance was disapproved as to the disciplinary claims and advised that the disapproval could also be appealed to the Office of Appeals. ECF No. 23-8 at 3-4.

The complaint also alleges that plaintiff received a "time-expired response" from the Office of Appeal for Log No. SAC-A-20-01938 dated November 11, 2020. ECF No. 1 at 5. Plaintiff's file reflects that no "time-expired response" was issued regarding Log No. SAC-A-20-01938. DSUF ¶ 19. A time expired notice was issued on November 11, 2020, regarding an appeal of an unrelated disciplinary charge. Id.; ECF No. 23-9 (paperwork for Log No. 29682).

Plaintiff's grievance history at CSP-Sacramento through June 2, 2023, reflects that these were the only two grievances plaintiff submitted regarding defendant's use of force and the Office of Appeals does not show any further appeals filed by plaintiff on this issue. DSUF ¶¶ 5, 20. The complaint was filed on March 9, 2022. DSUF ¶ 2; PSDF ¶ 2.

VI.   Legal Standards for Exhaustion

    A.   Exhaustion under the Prison Litigation Reform Act

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as

7

a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

8

Albino, 747 F.3d at 1168.

    B.  California Regulations Governing Exhaustion of Administrative Remedies

  Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations.

  For grievances initiated prior to June 1, 2020, the regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2019). The process was comprised of three levels of review for most types of appeals. Id. § 3084.7. In certain circumstances, the appeals coordinator was permitted to bypass the first level of appeal. Id. § 3084.7(a). If an appeal was denied at the first or second level, or the inmate was otherwise not satisfied by the response, he could appeal to the next level. Id. 3084.7(b), (c). The third level of review was for "review of appeals not resolved at the second level, id. at 3084.7(c), and except as provided by the regulations, an appeal was exhausted by obtaining a decision at the third level, id. § 3084.1(b).

  For grievances initiated on or after June 1, 2020,[3] the regulations allowed prisoners "to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a) (2020). The process was comprised of two levels of review for most types of appeals. Id. An appeal could also be exhausted at the first level if the decision issued was "Under Inquiry or Investigation," "Pending Legal Matter," or "Time Expired," otherwise, review by the Office of Appeals exhausted all administrative remedies. Id. §§ 3483(m), 3486(m). A claim was not considered exhausted if it was rejected. Id. A claim could be rejected for several reasons, including that it was "substantially duplicative of a prior claim by the same claimant." Id. § 3487(a)(3). A rejection could be appealed to the Office of Appeals, and if the appeal was

---

[3] Beginning January 5, 2022, another version of the regulations went into effect. DSUF ¶ 4. However, since plaintiff did not submit any grievances related to the claims in this case to which that version of the regulations would apply, those procedures will not be addressed.

1 | granted the claim would be reassigned to the Office of Grievances to be addressed at the first
2 | level. Id. § 3487(c).

3 |     VII.    <u>Discussion</u>

4 |     The facts regarding the availability of and plaintiff's use of the grievance process are
5 | largely undisputed. Though plaintiff asserts that his second-filed grievance was an amendment to
6 | the first, the parties are essentially in agreement that he filed two appeals which included
7 | allegations of excessive force against defendant. They dispute whether those appeals were
8 | sufficient to exhaust plaintiff's administrative remedies.

9 |     Plaintiff argues that because grievance 016100 was an amendment to grievance SAC-A-
10 | 20-01938, and 016100 was appealed to the Office of Appeals, he exhausted his administrative
11 | remedies. ECF No. 31 at 4, 7; ECF No. 32 at 3. He also appears to argue that 016100 exhausted
12 | his administrative remedies because when he appealed the rejection to the third level it put the
13 | CDCR on notice of his claims against defendant and the response said his administrative
14 | remedies were exhausted. ECF No. 31 at 5-9, 11. He reasons that the statement that he had
15 | exhausted his remedies waived any defects in the grievance. Id. at 6, 11. Considering the
16 | regulations governing inmate grievances and the evidence before the court, plaintiff's theory of
17 | exhaustion must fail.

18 |     First, whether a grievance was sufficient to put the prison on notice of plaintiff's claim is
19 | only one factor in determining whether a grievance satisfies the PLRA's exhaustion requirement.
20 | In addition to providing the prison with sufficient notice of the problem, plaintiff must have also
21 | complied with the procedural requirements of the grievance process. See <u>Sapp v. Kimbrell</u>, 623
22 | F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it puts the prison on
23 | adequate notice of the problem for which the prisoner seeks redress."); <u>Woodford</u>, 548 U.S. at 90
24 | ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural
25 | rules."). In this case, both grievances were sufficient to put the prison on notice regarding
26 | plaintiff's claims since they both identified defendant by name and alleged that defendant had
27 | used unnecessary force against plaintiff on May 17, 2020, and were recognized by the prison as
28 | making such claims. <u>See</u> ECF No. 23-5 at 2, 6, 8 (SAC-A-20-01938); ECF No. 23-8 at 3, 8, 10

(016100). However, plaintiff failed to appeal grievance SAC-A-20-01938 through the third level of appeal, and grievance 016100 was rejected as duplicative of SAC-A-20-01938.

It is undisputed that plaintiff did not appeal SAC-A-20-01938 and therefore did not exhaust that appeal. Instead, plaintiff argues that he submitted 016100 as an "amended grievance." This argument is unconvincing. Though the grievance submitted in 016100 mentions defendant's use of force, plaintiff's primary complaint was clearly the allegedly false disciplinary charge he received as a result of the incident. ECF No. 23-8 at 8, 10. At no point within the grievance did plaintiff state he was amending his prior grievance, id., and in his appeal of the rejection, plaintiff explicitly stated that he was grieving the disciplinary and that his "claim simply explain and lay out the event that took place on 5-17-20," id. at 6. It is therefore clear that plaintiff's intent was to grieve a separate, though related, issue.[4] Based on the undisputed evidence, the rejection of grievance 016100 as duplicative to the extent it complained of defendant's use of force appears to be clearly within the applicable regulations. Cal. Code Regs. tit. 15, § 3487(a)(3) (2020) (permitting rejection where "claim is substantially duplicative of a prior claim by the same claimant").

Plaintiff's argument that his appeal of the rejection exhausted his administrative remedies as to his claim against defendant also fails. As defendant points out, plaintiff was appealing the rejection, in other words, the determination that the grievance was duplicative, not the substance of the grievance. The regulations are clear that if plaintiff had successfully challenged the rejection, his grievance would have been sent back for a decision on the merits. See id. § 3487(c) (procedure for appealing rejection). Since the rejection of the claim as duplicative and the denial of plaintiff's appeal were both appropriate under the regulations, the merits of grievance 016100 were not appealed to the highest level. While plaintiff may have exhausted his administrative remedies as to the issue of whether his appeal was duplicative, he did not exhaust the claim itself. See id. §§ 3483(m)(1) (rejected claims and review of process resulting in rejection does not constitute exhaustion), 3486(m) (rejected claim is not exhausted).

---

[4] Even if plaintiff had intended to amend SAC-A-20-01938, it is not clear that amendment, rather than appealing the decision, would have complied with the applicable procedural rules.

To the extent plaintiff argues that the rejection of this grievance rendered his administrative remedies unavailable, to demonstrate unavailability he

> must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

Sapp, 623 F.3d at 823-24. As set forth above, plaintiff cannot show that the rejection of his grievance was inconsistent with the applicable regulations.

Finally, the complaint alleges that plaintiff received a "time-expired response" for grievance SAC-A-20-01938 on November 11, 2020 from Howard Moseley. ECF No. 1 at 5. However, defendant has presented evidence, which plaintiff does not dispute, showing that no such response was issued regarding Log No. SAC-A-20-01938, and that the time expired notice issued on November 11, 2020, was for an appeal of an unrelated disciplinary charge. DSUF ¶ 19; ECF No. 23-9 (paperwork for Log No. 29682).

VIII. Conclusion

For the reasons set forth above, the undersigned finds that plaintiff did not exhaust his administrative remedies prior to filing the complaint and defendant's motion for summary judgment should be granted.

IX. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendant's motion for summary judgment be granted and your claim against defendant be dismissed because you did not exhaust the prison grievance process for your claim.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 23) be GRANTED and this action be dismissed without prejudice for failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 19, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE